IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICKEEM GIDDENS,<br><br>Plaintiff,<br><br>v.<br><br>SEPTA OFFICER DETECTIVE ROBERT STEWART, <u>et al.</u><br><br>Defendants. | CIVIL ACTION<br><br>No. 20-cv-01474 |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                                              **July 22, 2021**

   Plaintiff Nickeem Giddens brings claims pursuant to 42 U.S.C. § 1983 and Pennsylvania state law, stemming from his alleged unlawful arrest, imprisonment, and prosecution by Defendant Officer Detective Robert Stewart of the Southeastern Transportation Authority ("SEPTA") police department and unnamed SEPTA police officers (collectively, the "SEPTA Defendants"). Plaintiff has also sued his former school, Mastery Charter School Pickett Campus ("Mastery").

   The SEPTA Defendants and Mastery have each filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, I will grant in part and deny in part the SEPTA Defendants' Motion to Dismiss and grant Defendant Mastery's Motion to Dismiss.

**I.**   **FACTUAL AND PROCEDURAL BACKGROUND**

   Plaintiff's four-count complaint asserts claims of false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983 as well as claims of malicious prosecution and negligence under Pennsylvania state law.

1

The following facts, viewed in the light most favorable to Plaintiff, are taken from the Amended Complaint:[1]

- On November 27, 2018 at 3:30 p.m., a minor alleged that he was assaulted on a SEPTA bus near the Olney Transportation Center in Philadelphia. SEPTA police responded to the incident. The victim reported that up to six people were involved in his assault and that they were students at Martin Luther High School and Roosevelt High School. (Am. Compl., ¶¶ 7, 19.)

- On December 13, 2018, Defendant Detective Stewart of the SEPTA police department interviewed the principal of Defendant Mastery, a school that Plaintiff had attended some years prior. The principal told Stewart that Plaintiff was a "former student" at her school. Upon viewing surveillance video of the attack at the Olney Transportation Center, the principal identified one of the assailants as Plaintiff, either by circling him in a photograph provided to her by Stewart or by producing this photograph herself. According to Plaintiff, this photograph, while undated, was at least several years old. (Id. at ¶¶ 21, 22.)

- Plaintiff alleges that the principal "knowingly misidentified plaintiff" and gave Detective Stewart the false impression that she knew what Plaintiff looked like at the time of the attack when, in fact, she had not seen him for years. In doing so, Plaintiff claims that Defendant Mastery breached its duty not to accuse him of committing a crime without probable cause and its duty not to give false information to police. (Id. at ¶¶ 51, 52, 55.)

- On January 4, 2019, the SEPTA Defendants arrested Plaintiff, a minor at the time, at his then-current high school, Eastern Academy Charter School, after obtaining an arrest

---

[1] In addition to allegations in the Amended Complaint, attachments to the Amended Complaint, and matters of public record, I may also consider "undisputedly authentic documents if the complainant's claims are based upon these documents" in deciding a motion to dismiss. Davis v. Solid Waste Servs., Inc., Nos. 12-5628, 12-5629, 12-5630, 2013 WL 1234727, at *2 n.2 (E.D. Pa. Mar. 5, 2013) (citing Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)). The SEPTA Defendants attach the Affidavit of Probable Cause and Arrest Warrant to their motion. The Amended Complaint, however, makes no mention of the Affidavit of Probable Cause or the warrant for Plaintiff's arrest. Yet, in his opposition, Plaintiff refers to and acknowledges the existence of these documents.
  I will consider these documents in deciding Defendants' motions to dismiss because their authenticity is not in dispute and the alleged unlawful nature of Plaintiff's arrest, which was carried out pursuant to a valid warrant, forms the basis of his claims. Shelley v. Wilson, 339 F. App'x 136, 137 (3d Cir. 2009) (noting that the district court properly considered the criminal complaint and arrest warrant in deciding a motion to dismiss a false arrest claim). Moreover, the existence of the Arrest Warrant and Affidavit of Probable Cause is crucial to my determination of probable cause because they confine my analysis of false arrest and false imprisonment to whether the Affidavit of Probable Cause provided "a sufficient basis for the decision the magistrate judge actually made" in issuing the warrant. United States v. Jones, 994 F.2d 1051, 1058 (3d Cir. 1993).

- warrant from Magistrate Judge Kevin Devlin of the Philadelphia Municipal Court. (SEPTA's Mot. at 4.)

- At the time of his arrest, Plaintiff informed the SEPTA Defendants of his innocence and "provided his alibi." Plaintiff claims that on November 27, 2018 at 2:40 p.m., he was removed from a bus outside of his high school and assaulted by three men. Two school employees witnessed the assault and called police who responded with the fire department and an ambulance. A school employee accompanied Plaintiff to Einstein Medical Center where he was met by his mother and seen in the Emergency Department from 3:18 p.m. to 4:43 p.m., when he was released. Both the assault and the hospital visit were documented by the school and the hospital respectively. (Am. Compl., ¶¶ 9, 10–12, 29.)

- Although Plaintiff informed the SEPTA Defendants of his whereabouts on the date in question, he claims that the SEPTA Defendants ignored him, and his mother, who corroborated Plaintiff's claim, and refused to investigate "the readily exculpatory evidence," even though witnesses who could corroborate Plaintiff's account were available at the arrest scene. (Id. at ¶¶ 28, 29, 33.)

- After his arrest, Plaintiff was "falsely imprisoned" for an undisclosed amount of time until he was later released to his parent. (Id. at ¶ 39.)

- The SEPTA Defendants charged Plaintiff with a series of juvenile offenses, including "aggravated assault, simple assault, criminal conspiracy and reckless endangerment of another person, two of which are felonies." (Id. at ¶ 6.)

- Plaintiff asserts that he suffered a loss of liberty from the time of his January 2019 arrest until five months later in May 2019 when the Philadelphia District Attorney's office withdrew all charges against him. Plaintiff claims that during the prosecution of his criminal case, exculpatory evidence regarding his whereabouts on the date in question "surfaced" but the SEPTA Defendants refused to withdraw the charges against him. As a result, Plaintiff alleges that he suffered extreme emotional distress and fear about whether he would be sent to a juvenile facility and taken from his family. (Id. at ¶¶ 28, 29, 30, 31, 37.)

## II.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Conclusory allegations do not suffice. Id.  While it "does not impose a probability requirement at the pleading stage," plausibility requires "enough facts to raise a

3

reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

When deciding a motion to dismiss, "'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'" Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III. DISCUSSION

### A. The SEPTA Defendants' Motion to Dismiss

The SEPTA Defendants seek dismissal of Plaintiff's § 1983 claims for false arrest, false imprisonment, and malicious prosecution based on the following arguments: (1) Defendant Detective Stewart had probable cause to arrest Plaintiff based on the victim's identification of Plaintiff as one of his assailants and the identification by the officials[2] of Plaintiff's former school from surveillance video of the assault; (2) probable cause was confirmed by Magistrate Judge

---

[2] The SEPTA Defendants argue that both the principal and assistant principal at Defendant Mastery identified him in the SEPTA surveillance video. However, the Amended Complaint identifies only Plaintiff's former principal. Thus, I will consider only the identification by Plaintiff's former principal as that is what is pled in the Amended Complaint.

4

Kevin Devlin of the Philadelphia Municipal Court when he signed the arrest warrant for Plaintiff; and (3) the SEPTA Defendants are shielded from all claims by qualified immunity. I address each of these arguments in turn below.

      i. *Probable Cause for False Arrest and False Imprisonment Under the Fourth Amendment*

To state a § 1983 claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) there was an arrest; and (2) that the arrest was made without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012).[3]

The Supreme Court of the United States has characterized probable cause as a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). A showing of probable cause thus requires "proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).

Although probable cause calls for more than mere suspicion, it does not mandate that the evidence at the time of the arrest be sufficient to prove guilt beyond a reasonable doubt. Nimley v. Baerwald, No. 02-7417, 2004 WL 1171733, at *7 (E.D. Pa. May 26, 2004) (citing Warlick v. Cross, 969 F.2d 303, 306 (7th Cir. 1992); Orsatti v. N.J. State Police, 71 F.3d 480, 482–83 (3d Cir. 1995)). Indeed, the ultimate finding of guilt or innocence, or even dismissal of charges arising out of an arrest and detention has no bearing on whether the arrest was valid. Pansy v. Preate, 870 F.

---

[3] The elements of a false imprisonment claim under § 1983 are: (1) that a person was detained, and (2) that the detention was unlawful. James, 700 F.3d at 682–83. "[A]n arrest based on probable cause [can]not become the source of a [§ 1983] claim for false imprisonment." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). Thus, for both Plaintiff's false arrest and false imprisonment claims, I will assess probable cause based on the alleged information available to the SEPTA Defendants at the time they applied for the arrest warrant.

Supp. 612, 617–18 (M.D. Pa. 1994) (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)), aff'd, 61 F.3d 896 (3d Cir. 1995).

Rather, "the proper inquiry is . . . whether the arresting officers had probable cause to believe the person arrested committed the offense." Molenski v. Ross, No. 09-1111, 2010 WL 2766891, at *4 (E.D. Pa. July 12, 2010) (quotations omitted). The test is an objective one based on the facts available to the officers "at the moment of arrest," rather than in hindsight. Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).

Where an arresting officer arrests a person on a valid warrant, however, the proper focus of the probable cause analysis is more confined. The court must determine "whether the affidavit provide[d] a sufficient basis for the decision the magistrate judge actually made." United States v. Jones, 994 F.2d 1051, 1058 (3d Cir. 1993). Thus, to plead a Fourth Amendment violation on the basis of an arrest warrant, a plaintiff must state factual allegations sufficient to establish (1) that "the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,'" and (2) that "those assertions or omissions were 'material, or necessary, to the finding of probable cause." Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) (quotations omitted).

An assertion is made with reckless disregard when "the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. at 698 (quotations omitted). Omissions are made with reckless disregard where "an officer withholds a fact in his ken that any reasonable person would have known . . . was the kind of thing the judge would wish to know." Id. (quotations omitted).

Here, the SEPTA Defendants argue that they had sufficient probable cause to obtain a warrant for Plaintiff's arrest for several reasons. First, the victim of the Olney Transportation

6

Center assault identified several of his attackers by name, including one "Nick Giddings." (SEPTA's Mot. at 4; Plaintiff's Opp. to SEPTA's Mot. at 4.) According to Defendants, the victim claimed to have recognized his assailants because he had previously gone to school with them. The SEPTA Defendants then approached the principal and assistant principal at that former school, Defendant Mastery, to corroborate the victim's identification using surveillance video of the incident. It was at that time that the SEPTA Defendants argue they were provided with the correct spelling and name of Plaintiff along with identifications of the other males seen in the video, also former students of the school. Based upon this apparent confirmation of the victim's identification of Plaintiff, the SEPTA Defendants swore an Affidavit of Probable Cause for Plaintiff, which was reviewed and signed by Magistrate Judge Kevin Devlin of the Philadelphia Municipal Court. The next day, the SEPTA Defendants arrested Plaintiff.

I agree with the SEPTA Defendants that the arrest warrant was based on sufficient probable cause. In order for Plaintiff's false arrest and false imprisonment claims to survive, he must plausibly plead that the SEPTA Defendants, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant. Plaintiff makes no such allegation.

Instead, Plaintiff claims that the SEPTA Defendants failed to investigate his whereabouts after he informed them at the time of his arrest that he was in the hospital on the day in question. It is true that an officer cannot look only at evidence of guilt while ignoring exculpatory evidence when applying for a warrant. See Briscoe v. Jackson, 2 F. Supp. 3d 635, 644 (E.D. Pa. 2014) (citing Gardenshire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000). But Plaintiff does not allege that the SEPTA Defendants were aware of his alibi when they applied for the warrant. As alleged in the Amended Complaint, the victim of the Olney assault informed the SEPTA Defendants where his

approximately six assailants were enrolled in school. That identification led the SEPTA Defendants to Plaintiff's former school, where at least one individual, who knew Plaintiff, identified him from video surveillance of the assault and from a photograph. The SEPTA Defendants swore the Affidavit of Probable Cause after receiving two identifications, one from the alleged victim of the assault and one from a school official viewing the video surveillance. To claim that the SEPTA Defendants were required to anticipate that Plaintiff may have had an alibi and were required to further investigate Plaintiff in order to uncover that alibi sets too high a standard for probable cause, one that is not supported by precedent. See Briscoe, 2 F. Supp. 3d at 644 (E.D. Pa. 2014) ("[A]n officer does not have to investigate independently every claim of innocence . . . .").

For these reasons, I conclude that Plaintiff has failed to sufficiently plead that the warrant for his arrest lacked probable cause and, therefore, will dismiss his claims for false arrest and false imprisonment.

       *ii. Probable Cause for Malicious Prosecution Under the Fourth Amendment*

Plaintiff also brings a § 1983 claim of malicious prosecution against the SEPTA Defendants. To state a claim for malicious prosecution under § 1983, a plaintiff must show that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Although they are related and often asserted together, "a claim of malicious prosecution is a slightly different species of claim from claims of false arrest and imprisonment." Garland v.

Bonds, No. 19-1874, 2020 WL 2126330, at *8 (E.D. Pa. May 5, 2020). For example, "[i]t is no defense to a malicious prosecution claim to assert that when the case began there was probable cause, if the evidence reveals that some intervening event wholly undermined that probable cause showing." Naslanic v. Gula, No. 15-2208, 2018 WL 1886526, at *6 (M.D. Pa. Mar. 29, 2018), report and recommendation adopted sub nom., Naslanic v. Musto, No. 15-2208, 2018 WL 1886493 (M.D. Pa. Apr. 19, 2018). "Probable cause must exist throughout the duration of the criminal case." Id. "When intervening events negate probable cause, and the authorities know of those intervening events but fail to act, government actors may still be sued for malicious prosecution if they persist in pursuing a case long after probable cause has collapsed." Id.; Walker v. Spiller, 1998 WL 306540 at 6 (E.D. Pa. 1998) (finding that the officer's duty to investigate the plaintiff's alibi "must be weighed in the context of the strength or weakness of the probable cause evidence."); Kelly v. Jones, 148 F. Supp. 3d 395, 403 (E.D. Pa. 2015) (denying the defendant officer's motion to dismiss the plaintiff's malicious prosecution claim based on the officer's alleged failure to investigate the plaintiff's alibi); id. ("[A] police officer may not close his or her eyes to facts that would clarify the circumstances of an arrest." (quoting BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986))).

The Third Circuit has recognized that "it is settled law that 'officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution . . . .'" Halsey v. Pfeiffer, 750 F.3d 273, 297–99 (3d Cir. 2014) (quoting Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004)) (overturning the district court's grant of summary judgment on the plaintiff's malicious prosecution claim against the defendant officers because the information provided by the officers to the prosecutor "tainted" the probable-cause inquiry and led the prosecutor to file the criminal complaint). "If the officers influenced or

participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." Id.

Here, Plaintiff alleges that during his arrest, he informed the SEPTA Defendants that he was in the hospital at the time of the Olney Transportation Center assault. He claims that his mother also confirmed those whereabouts with the SEPTA Defendants, but the SEPTA Defendants ignored them and refused to investigate this exculpatory evidence. I find that at this stage of the case, the information Plaintiff allegedly provided to the SEPTA Defendants about his alibi sufficiently pleads the existence of an intervening event that negated probable cause. See Naslanic, 2018 WL 1886526, at *6. Because Plaintiff has pled that the SEPTA Defendants allegedly knew of those intervening events but failed to investigate further and failed to withdraw the charges after the Plaintiff's alibi was later confirmed, I find that Plaintiff has plausibly pled a lack of probable cause for the initiation of criminal proceedings against him.

### 2. Qualified Immunity for Malicious Prosecution

The SEPTA Defendants argue that even if Plaintiff has plausibly alleged a constitutional violation, they are entitled to qualified immunity on all claims because a reasonable officer would conclude that the identification of the Plaintiff by the victim and Plaintiff's former school administrators would constitute probable cause for arrest. "A court presented with a claim of qualified immunity must examine both the law that was clearly established at the time of the alleged violation and the facts available to the official at that time, and must then determine, in light of both, whether a reasonable official could have believed his conduct was lawful." Paff v. Kaltenbach, 204 F.3d 425, 431 (3d Cir. 2000); see also Good v. Dauphin County Social Serv. for Children and Youth, 891 F.2d 1087, 1092 (3d Cir. 1989). Accordingly, I must first examine the state of the relevant law at the time of the arrest and prosecution of Plaintiff and then turn to an analysis of the information available to the SEPTA Defendants at that time. The ultimate issue will

then be whether, given the established law and the information available to the SEPTA Defendants, reasonable law enforcement officers in their position could have believed that their conduct was lawful.

I have already determined that with regard to Plaintiff's malicious prosecution claim, he has alleged enough facts to make out a potential violation of a constitutional right at this stage of the litigation, though such a violation will later need to be supported by facts. Thus, I must determine whether the right that Plaintiff invokes was clearly established at the time of his arrest and prosecution. The Supreme Court has stated that a police officer is not entitled to qualified immunity if "a reasonably well-trained officer in [Defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Malley v. Briggs, 475 U.S. 335, 345 (1986); see also Kelly v. Borough of Carlisle, 622 F.3d 248, 255 (3d Cir. 2010).

While this language from Malley speaks to the act of applying for a warrant, it is equally applicable to the situation before me, where qualified immunity hinges on the continued existence of probable cause following arrest, when the question of mistaken identity presented itself. See Kelly, 148 F. Supp. 3d at 404. Probable cause ceases to exist when it becomes clear that the wrong person has been taken into custody—a fact that the SEPTA Defendants could have readily ascertained after Plaintiff informed him of his whereabouts on the day of his arrest. See id. Moreover, the proposition that no citizen can be imprisoned without probable cause would be self-evident to any officer. See id.

However, my determination of what specific information was available to the SEPTA Defendants and whether, given that information, reasonable law enforcement officers in their

position could have believed that their conduct was lawful requires development of the factual record. Thus, I will decline to grant qualified immunity at this stage of the case.

## B. Defendant Mastery's Motion to Dismiss

Plaintiff also brings claims of malicious prosecution and negligence pursuant to Pennsylvania state law against Defendant Mastery.

### 1. State Law Malicious Prosecution Claim Against Mastery

Defendant Mastery argues that the malicious prosecution claim against it must be dismissed because (1) Mastery did not initiate the criminal proceedings against Plaintiff; (2) the Amended Complaint fails to plead any facts showing malice; and (3) Mastery acted with probable cause to identify Plaintiff based on the surveillance video that the SEPTA Defendants provided to its agents. Under Pennsylvania law, a private individual may be subject to liability for malicious prosecution if (a) she initiates or procures the institution of criminal proceedings without probable cause and primarily for a purpose other than that of bringing the offender to justice, and (b) the proceedings have terminated in favor of the accused. Bradley v. General Acc. Ins. Co., 778 A.2d 707, 710 (Pa. Super. Ct. 2001) (internal quotation marks omitted); Hess v. Lancaster Cnty., 514 A.2d 681, 683 (Pa. Commw. Ct. 1986) (quoting Restatement (Second) of Torts §653).

Merely providing information in a police investigation can be sufficient for a Pennsylvania state law claim of malicious prosecution when the private party knowingly provides false information or "appear[s] that his desire [was] to have the proceedings initiated, expressed by direction, request or pressure of any kind [and] was the determining factor in the official's decision to commence the prosecution." Hess, 514 A.2d at 683. The law in Pennsylvania on malicious prosecution "has developed to a large extent based upon the Restatement (Second) of Torts":

>We refer to Section 653, comment g, of the Restatement (Second) of Torts as a guide to determining when a private individual can be responsible for initiating a criminal proceeding by providing statements to the police or law enforcement authorities:
>
>>A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>>
>>If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.
>>
>>Thus, comment g distinguishes between situations in which a private individual merely provides information to an official who exercising discretion, may initiate charges, and those in which a private individual either provides knowingly false statements to an official or directs or pressures an official to initiate charges, thereby making the officer's intelligent use of discretion impossible.

Bradley, 778 A.2d at 710–711 (citations omitted) (internal quotation marks omitted).

Here, apart from conclusory allegations, there are no facts pled in the Amended Complaint to support the allegation that Mastery acted with malice or for the purpose of initiating criminal proceedings against Plaintiff. (See Am. Compl. ¶ 51.) Even viewing the facts in the Amended Complaint in the light most favorable to Plaintiff, Defendant Mastery watched a video of the Olney assault provided by SEPTA police and identified Plaintiff, a former student, from that video and

13

from a photograph. Plaintiff fails to plausibly allege that Mastery knew this identification to be false. Thus, I will dismiss the state malicious prosecution claim against Defendant Mastery.

### 2. State Law Negligence Claim against Mastery

Finally, Defendant Mastery argues that the negligence claim against it should be dismissed because (1) Pennsylvania does not recognize a cause of action for negligently identifying a person as a perpetrator of a crime; (2) Plaintiff wrongly argues that Mastery owed him a duty of care as his former school and breached this duty in falsely identifying him to police; and (3) Plaintiff wrongly argues that Mastery had a duty not to give false or misleading information to police, which is also not a recognized cause of action for negligence.

To prove a negligence claim in Pennsylvania the plaintiff is required to prove that the defendant had a duty to him, that the defendant breached that duty, that he suffered damages, and that the defendant's breach caused those damages. See, e.g., Wittrien v. Burkholder, 965 A.2d 1229, 1232 (Pa. Super. Ct. 2009). The question of duty is central to an analysis of negligence where a court must determine first "whether a defendant is under any obligation for the benefit of the particular plaintiff . . . and unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." J.E.J v. Tri-County Big Brothers/Big Sisters, Inc., 692 A.2d 582, 584 (Pa. Super. Ct. 1997) (quoting Hoffman v. Sun Pipe Line Co., 575 A.2d 122, 125 (Pa. Super. Ct. 1990)).

To determine whether or not a duty of care exists between any given plaintiff and defendant, Pennsylvania courts typically balance several factors, including "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." Althaus ex. Rel. Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000). None of these aforementioned factors alone is dispositive and a

court will find a duty between the parties only where "the balance of these factors weighs in favor of placing such a burden on a defendant." Phillips v. Cricket Lighters, 841 A.2d 1000, 1009 (Pa. 2003). The court must conduct this balancing test based on the "relationship existing between the parties at the relevant time." Morena v. South Hills Health System, 462 A.2d 680, 684 (Pa. 1983).

Furthermore, there is a strong, public interest in a citizen cooperating with an ongoing police investigation without fear of litigious reprisal. "The potential of civil liability for the provision of mistaken information to law enforcement agents would have a chilling effect on citizen cooperation and the provision of valuable information by citizens to police . . . the public interest in investigation of crime outweighs the recognition of a negligence action for negligent identification of a suspect." Davis v. Equibank, 603 A.2d 637, 641 (Pa. Super. Ct. 1992) (holding that Pennsylvania will not recognize a cause of action for a third party's negligent identification of a suspect).

Plaintiff argues that Defendant Mastery stood in a special relationship with him as a former student of the school and as a then-current student in the same school district. Further, Plaintiff alleges that Defendant Mastery's agent, who erroneously identified him to police, knew him personally. While Plaintiff acknowledges the Althaus factors and the social utility of not imposing a duty on parties cooperating with a police investigation, he claims that Defendant Mastery's agent knew that her identification was deceptive because she had not seen him since he was a middle school student at her institution and his appearance had changed due to the natural progression from pre-adolescence to young adulthood.

I conclude that Plaintiff's negligence claim fails for several reasons. First, negligent identification of a criminal perpetrator is not a cognizable offense in Pennsylvania. Jaindl v. Mohr, 661 A.2d 1362 (Pa. 1995). In Jaindl, as in the instant case, the court dealt with a case of an incorrect

15

suspect identification from a person who was not an eyewitness to the crime but rather provided information to police after the fact. Id. at 1365. In that case, the court denied the wrongly accused's appeal of summary judgment because there was no evidence of any wrongdoing on the part of the defendants. Id. The same reasoning applies to the case before me. Plaintiff has not sufficiently pled that Mastery engaged in any wrongdoing by identifying him from video surveillance and from a photograph.

Second, Plaintiff alleges that Mastery owed him a duty as his former school and as a school in the same district as his high school. But no such duty has been recognized in Pennsylvania. In fact, the Third Circuit has held that there is no special duty of care owed by a school superintendent to even his current students. In Black v. Indiana Area School District, 985 F.2d 707 (3d Cir. 1993), the court declined to recognize a "special relationship" between the school administrator and his students in a negligence suit brought by the parents of several girls ages six through eight who had been molested by their school bus driver. Id. The court reasoned that it could not extend the "special relationship" exception, applied to incarcerated individuals and individuals in mental institutions, to children who are required to attend school each day and thus are placed in the care of their academic institutions because their "parents remain the primary caretakers." Id. at 713 (quoting D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364 (3d Cir. 1992)). Consequently, I will not impose a special duty of care upon the Plaintiff's former school.

### IV. CONCLUSION

For the foregoing reasons, I will grant the SEPTA Defendants' Motion to Dismiss regarding Plaintiff's § 1983 false imprisonment and false arrest claims. However, I will deny the

SEPTA Defendants' Motion to Dismiss Plaintiff's malicious prosecution cause of action. Defendant Mastery's Motion to Dismiss will be granted.

An appropriate Order follows.